**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | |
|---|---|
| BENJAMIN AIKEN, <br> 2602 Willett Drive #414 <br> Laramie, WY 82072 <br><br>            Plaintiff, <br><br>    v. <br><br> DCT INDUSTRIAL TRUST, INC., <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202, <br><br> DCT INDUSTRIAL OPERATING <br> PARTNERSHIP LP, <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202, <br><br> THOMAS F. AUGUST, <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202, <br><br> MARILYN A. ALEXANDER, <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202, <br><br> RAYMOND B. GREER, <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202, <br><br> JOHN S. GATES, JR., <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202, <br><br> TRIPP H. HARDIN, III, <br> c/o CSC-Lawyers Incorporating Service Company <br> 7 St. Paul Street, Suite 820 | Case No. _____ <br><br> JURY TRIAL DEMANDED <br><br> **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |

| | |
|---|---|
| Baltimore, MD 21202, | ) |
| | ) |
| TOBIAS HARTMANN, | ) |
| c/o CSC-Lawyers Incorporating Service Company | ) |
| 7 St. Paul Street, Suite 820 | ) |
| Baltimore, MD 21202, | ) |
| | ) |
| PHILIP L. HAWKINS, | ) |
| c/o CSC-Lawyers Incorporating Service Company | ) |
| 7 St. Paul Street, Suite 820 | ) |
| Baltimore, MD 21202, | ) |
| | ) |
| JOHN C. O'KEEFFE, | ) |
| c/o CSC-Lawyers Incorporating Service Company | ) |
| 7 St. Paul Street, Suite 820 | ) |
| Baltimore, MD 21202, | ) |
| | ) |
| and | ) |
| | ) |
| MARCUS L. SMITH, | ) |
| c/o CSC-Lawyers Incorporating Service Company | ) |
| 7 St. Paul Street, Suite 820 | ) |
| Baltimore, MD 21202, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Benjamin Aiken ("Plaintiff"), by and through his undersigned attorneys, brings this action against DCT Industrial Trust, Inc. ("DCT" or the "Company"), the members of the Company's board of trustees (collectively referred to as the "Board" or the "Individual Defendants," and, together with DCT, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") by and among DCT, DCT Industrial Operating Partnership LP ("DCT Operating Partnership"), Prologis, Inc. ("Parent"), and Prologis, L.P. ("Parent OP, and together with Parent, "Prologis"). Plaintiff alleges the following based upon personal knowledge as to herself, and upon

2

information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.      On April 29, 2018, DCT entered into an Agreement and Plan of Merger ("Merger Agreement") with Prologis.

2.      Pursuant to the Merger Agreement, Prologis will acquire all outstanding stock of DCT.  In consideration, each DCT stockholder will receive 1.02 shares of Prologis common stock per share of DCT common stock (the "Consideration").

3.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Form S-4 registration statement (the "Registration Statement") to be filed with the U.S. Securities and Exchange Commission (the "SEC") on June 8, 2018.  The Registration Statement contains the recommendation of the DCT board of directors (the "Individual Defendants" or the "Board") to DCT stockholders to vote in favor of the Proposed Transaction at the upcoming stockholder special meeting (the "Stockholder Vote"), and agree to exchange their shares pursuant to the terms of the Merger Agreement based among other things on internal and external factors examined by the Board to make its recommendation and an opinion rendered by the Company's financial advisor, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch").

4.      Specifically, the Registration Statement contains materially incomplete and misleading information concerning the Company's financial projections prepared by Company management for the Board, as well as the valuation analyses performed by Merrill Lynch to present to the Board and support its opinion on the fairness of the Proposed Transaction.

5.      The special meeting of DCT stockholders to vote on the Proposed Transaction is forthcoming. Therefore, it is imperative that the material information omitted from the Registration

Statement is disclosed to the Company's shareholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to DCT stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

7. Plaintiff is, and at all relevant times has been, a stockholder of DCT.

8. Defendant DCT is a Maryland corporation and maintains its principal executive offices at 555 17th Street, Suite 3700, Denver, Colorado, 80202. DCT's common stock is listed on the New York Stock Exchange under the ticker symbol "DCT."

9. DCT Operating Partnership is a Delaware limited partnership through which DCT conducts its business. DCT owns approximately 96.7% of the equity interest in DCT Operating Partnership.

10. Defendant Thomas F. August has served as the Chairman of the Board and Lead Independent Director of DCT since 2006.

11. Defendant Marilyn A. Alexander has served as a director of the Company since 2011.

12. Defendant Raymond B. Greer has served as a director of the Company since 2010.

13. Defendant John S. Gates has served as a director of the Company since 2006.

14. Defendant Tobias Hartmann has served as a director of the Company since 2016.

15. Defendant Tripp H. Hardin has served as a director of the Company since 2002.

16. Defendant John C. O'Keeffe has served as a director of the Company since 2002.

17. Defendant Marcus L. Smith has served as a director of the Company since 2017.

18. Defendant Philip L. Hawkins has served as the Chief Executive Officer and a director of the Company since October 2006, and as President of the Company since January 2016.

19. The parties in paragraphs 10 through 18 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with DCT the "Defendants."

20. Non-party Prologis leases distribution facilities to approximately 5,000 customers across. As of March 31, 2018, Prologis owned or had investments in properties and development projects expected to total 683 million square feet in nineteen countries.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

22. Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took effect under the laws in this District; (ii) DCT is organized under the laws of this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained

of herein, occurred under the laws of this District; (iv) relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

**Company Background and the Proposed Transaction**

24. DCT is a logistics real estate company that owns, develops, acquires, leases, and manages bulk-distribution and light industrial properties in the United States. As of March 31, 2018, DCT owned interests in approximately 73.7 million square feet of properties leased to approximately 840 customers.

25. On April 29, 2018, Prologis and DCT announced the Proposed Transaction by a press release issued through PRNewswire, which states in relevant part:

> SAN FRANCISCO and DENVER, April 29, 2018 /PRNewswire/ -- Prologis, Inc. (NYSE: PLD) and DCT Industrial Trust Inc. (NYSE: DCT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire DCT for $8.4 billion in a stock-for-stock transaction, including the assumption of debt. The boards of directors of both companies have unanimously approved the transaction.
>
> "For some time, we have considered DCT's realigned portfolio to be the most complementary to our own in terms of product quality, market position and growth potential," said Prologis chairman and chief executive officer Hamid R. Moghadam. "This high level of strategic fit will allow us to capture significant scale economies immediately. In addition, our current platform initiatives, particularly in the areas of advanced analytics, customer experience and procurement and ancillary revenues, will enable us to extract significant upside from the combined portfolios."
>
> The 71 million square foot operating portfolio deepens Prologis' presence in high-growth markets including Southern California, the San Francisco Bay Area, New York/New Jersey, Seattle and South Florida. The acquisition also includes:
>
> - 7.1 million square feet of development, redevelopment and value-added projects

- 195 acres of land in pre-development, predominantly in Seattle, Atlanta, South Florida and Southern California with build-out potential of over 2.9 million square feet
- 215 acres of land under contract or option, predominately in New York/New Jersey, Southern California, Northern California and Chicago, with a build-out potential of over 3.3 million square feet

"This transaction underscores the exceptional quality of DCT's portfolio, platform and customer relationships, which our talented team has worked hard to create," said DCT Industrial president and chief executive officer Philip L. Hawkins. "Our shared commitment to quality, exceeding expectations and enhancing customer experience makes this a perfect combination."

"DCT's team is as good as it gets, and we expect a number to join us to help manage the portfolio, execute on capital deployment activities and make long-term contributions to the Prologis platform," said Prologis chief executive officer for the Americas Eugene F. Reilly. "This deal also diversifies our customer roster through the addition of some 500 new relationships."

The transaction is anticipated to create substantial synergies, including near-term synergies of approximately $80 million in corporate general and administrative cost savings, operating leverage, interest expense and lease adjustments, which are forecast to increase annual stabilized core funds from operations* (Core FFO) per share by $0.06-$0.08. A combination of revenue synergies and incremental development volume has the potential to generate $40 million of additional annual revenue and development profit in the future.

"This all-stock transaction enables us to maintain our strong balance sheet and significant financial flexibility," said Prologis chief financial officer Thomas S. Olinger. "In addition, the transaction increases our U.S. dollar net equity and drives additional core FFO growth."

Under the terms of the agreement, DCT shareholders will receive 1.02 Prologis shares for each DCT share they own. The transaction, which is currently expected to close in the third quarter of 2018, is subject to the approval of DCT stockholders and other customary closing conditions. At closing, it is anticipated that Philip L. Hawkins will join the Prologis board of directors.

J.P. Morgan is acting as exclusive financial advisor and Mayer Brown LLP is serving as legal advisor to Prologis. BofA Merrill Lynch is acting as exclusive financial advisor and Goodwin Procter LLP is serving as legal advisor to DCT.

**The Registration Statement is Materially Incomplete and Misleading**

26. On June 8, 2018, in order to convince the stockholders of DCT to vote in favor of

7

the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Registration Statement containing the recommendation of the Board. The Registration Statement solicits the Company's stockholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Merrill Lynch's Valuation Analyses and Fairness Opinion*

27.    The Registration Statement describes Merrill Lynch's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Merrill Lynch's fairness opinion and analyses omits key inputs and assumptions underlying these analyses. Without this information, as described below, DCT's stockholders are being misled as to what weight, if any, to place on Merrill Lynch's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to DCT's stockholders.

28.    With respect to Merrill Lynch's *Discounted Cash Flow Analysis*, the Registration Statement omits four of the key components of the analysis of both DCT and Prologis, including: (i) the terminal values actually calculated and used in the analysis; (ii) the values of debt and cash Merrill Lynch assumed in calculating enterprise value; (iii) the inputs and assumptions underlying the calculation of discount rate ranges; and (iv) the perpetuity growth rates implied by Merrill Lynch's analyses.

29. The selection of each of these values significantly effects the valuation of the future cash flows of DCT as a standalone company as well as the value of Prologis cash flows to DCT stockholders. Therefore the omission of these values misleads DCT stockholders regarding the work performed by Merrill Lynch and the most useful determination of the Company's present value: the present value of the future cash flows available for disbursement to stockholders.

30. Furthermore, with respect to Merrill Lynch's *Selected Publicly Traded Companies Analysis* of DCT and Prologis, the Registration Statement fails to disclose the actual observed multiples Merrill Lynch utilized for each company in the analysis. The omission of these multiples renders the summary of the analysis and the implied values materially misleading, and makes the recitation an unfair summary of the analysis. A fair summary of the analyses requires the disclosure of the individual multiples; merely providing the range that a banker applied is insufficient, as DCT stockholders are unable to assess whether Merrill Lynch applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation

*Financial Projections*

31. The Registration Statement discloses projections of the non-GAAP accounting metrics Adjusted EBITDA, FFO, AFFO, and Unlevered Free Cash Flows for the Company and Prologis.

32. Disclosing non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

33. The Registration Statement fails to disclose the line items underlying these metrics necessary to reconcile them to GAAP measures.

34. Defendants failed to reconcile these metrics despite performing such a reconciliation in its quarterly report for the period ended March 31, 2018. This quarterly report contained a line item reconciliation of FFO to net income, a GAAP financial metric. Therefore such a reconciliation could be performed on the projected financials disclosed in the Registration Statement.

35. Without disclosure of these reconciling metrics, the Registration Statement violates SEC regulations and materially misleads DCT stockholders. The Registration Statement omits the actual projections and financial metrics used by Merrill Lynch in completing its financial analysis.

36. Omission of the above-referenced projections renders the financial projections included in the Registration Statement materially incomplete and misleading. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. Here, the failure to provide a reconciliation of these non-GAAP metrics renders them misleading by omission. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

## COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the financial projections presented to the Board; and (ii) the valuation analyses performed by the Company's financial advisor, Merrill Lynch.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to DCT common stockholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the

Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Merrill Lynch reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Merrill Lynch, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Merrill Lynch's analyses in connection with their receipt of the fairness opinion, question the advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement, and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed,

12

the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45. DCT is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

46. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the DCT stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the DCT stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the DCT stockholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of DCT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of DCT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of DCT, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of DCT, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

51. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the DCT stockholders will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing the Individual Defendants to account to Plaintiff for all damages suffered as a result of the Individual Defendants wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 13, 2018

**LEVI & KORSINSKY LLP**

By: */s/ Donald J. Enright*
Donald J. Enright (Bar No. 13551)
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com
　　　　etripodi@zlk.com

*Attorneys for Plaintiff*